UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STANLEY E. STILWELL, JR., | Case No. 2:19-cv-1896-KJD-VCF |
| Plaintiff, | ORDER |
| v. | |
| CAESARS ENTERTAINMENT CORPORATION and BARTENDERS' UNION LOCAL 165 | |
| Defendants. | |

Presently before the Court is Defendant Bartenders' Union Local 165's Motion to Dismiss Amended Complaint (#44). Plaintiff filed a response in opposition (#45) to which Defendant replied (#48).

I. Background

In his first Complaint (#1), Plaintiff, a terminated former Caesars' employee in a collective bargaining unit represented by the Union, brought a single claim against the Union for breach of the duty of fair representation. The Court granted the Union's motion to dismiss, finding that Plaintiff's allegations were "vague and conclusory regarding his claim that the Union breached its duty of fair representation." Order, Dkt. 40, at 2:20-21. The Court granted Plaintiff leave to amend.

Plaintiff's First Amended Complaint (#41) alleges that he was employed as a bartender by Defendant Caesars Entertainment Corporation ("Caesars") from 2014 until his termination on or about November 2, 2018, "allegedly for willful off-duty misconduct and for sending an alleged inappropriate text message" to one of Caesars' employees. Am. Compl. ¶ 13. He alleges that he was represented in all matters regarding the terms and conditions of employment by the Bartenders' Union Local 165 ("Union") during his employment at Caesars. Id. ¶¶ 3-4, 13-14.

As in his first complaint, he alleges without specific facts that he "encountered disparate treatment, wage scale disputes, seniority disputes and various CBA violations" while employed by Caesars. Id. ¶ 15. He alleges that he "lodged a formal grievance on July 31, 2018 with his union . . . the basis being that the CBA violations he and others experienced while employed by Defendant Caesars must be corrected." Id. ¶ 16. He alleges, "Defendants never rectified Plaintiff's verbal and written complaints regarding CBA violations." Id. He alleges that he "requested" a grievance in May 2018, was told that there would be a general grievance and that an individual grievance would not be pursued and was "denied entrance to the general grievance meeting" on August 30, 2018. Id. ¶ 17.

Again, just as in his first Complaint, Plaintiff alleges that "Defendants thereafter sought pretextual, baseless and unjustified reasons to terminate Plaintiff." Id. ¶ 19. Plaintiff alleges that Plaintiff was "suspended pending investigation for an off-duty incident that occurred the day before on October 3, 2018." Id. "On this date, Defendants allege that Plaintiff committed willful misconduct by refusing to leave another of Defendant Caesars' properties when asked to do so by Defendant Caesar's Security Personnel, despite that there was video surveillance that showed Plaintiff was not engaging in any misconduct. Defendants further alleged that Plaintiff sent a threatening text message to one of Defendant Caesars' employees as reason to justify suspending Plaintiff." Id.[1]

Plaintiff states, just as in the first Complaint: "On November 2, 2018 Defendant Caesars then fired Plaintiff for the same baseless and unjustified reasons despite Defendants having viewed video evidence to the contrary." Id. ¶ 21. Plaintiff alleges that he filed a Nevada Equal Rights Commission (NERC) charge "for retaliation and disability" on April 2, 2019, and that the parties attended a mediation on April 23, 2019. Id. ¶¶ 21-22. Plaintiff acknowledges that he "was represented by Defendant Local 165 and Mr. Michael Contorelli" at the mediation, and that he requested that Local 165 pursue his "wrongful termination without cause through arbitration." Id. ¶ 22.

---

[1] Underlined text in quoted Amended Complaint (#41) is new; other language was also in the original Complaint (#1).

He does not allege when this request took place, or whether he filed a written grievance.[2] Plaintiff further alleges, just as in the first Complaint: "On May 6, 2019, Defendant Local 165 wrote Plaintiff informing him that Defendant Local 165 would not pursue redress through arbitration and that the matter was closed." (Id. ¶ 23.) He adds: "No reason was stated. Plaintiff contends that Defendant Local 165 did not pursue arbitration not because Plaintiff's termination was not wrongful, but because Mr. Contorelli's loyalties were with Defendant Caesars rather than to union members such as Plaintiff." Id. Plaintiff then alleges, just as in his original complaint, "While Plaintiff timely requested a grievance and arbitration, Defendant Local 165 employees, members, representatives, agents and attorneys failed or otherwise refused to represent him adequately. Plaintiff was therefore restrained and frustrated by his union and Plaintiff was never allowed to pursue his right to work and get his job back. Plaintiff's union failed to represent him." Id. ¶ 24. He adds to the Amended Complaint that Local 165 "failed or otherwise refused to represent him in arbitration without a stated reason constituting arbitrary, discriminatory and bad faith acts toward Plaintiff due to Plaintiff's filing of numerous grievances." Id. ¶ 24. He also adds that "Plaintiff's union failed to represent him, and failed to represent him because Plaintiff had filed numerous grievances and Defendant Local 165 was begrudged [sic] and therefore did not care to fairly represent Plaintiff." Id.

Just as in the first Complaint, Plaintiff finally alleges that he "timely requested that the CBA violations he and others experienced be addressed and corrected and his termination be aggrieved [sic] and arbitrated." Am. Compl. ¶ 30. He does not say he filed a grievance regarding his termination, or when he requested that "his termination be aggrieved." Id. Again acknowledging that the Union, in fact, did conduct an investigation, Plaintiff again complains that the Union "refused Plaintiff to participate in or review evidence from Defendant Local 165's investigation." Id. He alleges, just as in the first Complaint, but adding a conclusory label, that "Defendant Local 165 union representatives deliberately and intentionally misled Plaintiff by

---

[2] Unlike the "formal" grievance that Plaintiff alleges that he submitted on July 31, 2018, regarding "CBA violations," Plaintiff does not actually allege that he submitted a formal grievance regarding his termination, nor does he allege he actually filed a prior grievance on May 16, 2018, regarding "disparate wages." See id. ¶¶ 16, 17, 18-24.

- 3 -

informing Plaintiff to essentially overlook the CBA violations since Defendant Local 165 and Defendant Caesars exchanged favors for each other intimating, therefore, that such infractions should be ignored, even if Defendant Local 165 had not failed to properly represent him, <u>which is arbitrary, discriminatory and in bad faith</u>." Am. Compl. ¶ 30.

After the Amended Complaint (#41) was filed the Union filed the present motion to dismiss arguing that the additions to the complaint failed to correct the factual deficiencies in the original complaint noted by the Court.

<u>II. Standard for a Motion to Dismiss</u>

In considering whether a complaint is sufficient to state a claim under Rule 12(b)(6), the Court takes all material allegations as true and construes them in the light most favorable to the plaintiff. See <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations which are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. See <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.2001); <u>Trustees of Nev. Resort Ass'n Int'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators of U.S. & Canada Local 720 Pension Trust v. Encore Prods., Inc.</u>, 742 F. Supp.2d 1132, 1134 (D. Nev. 2010). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557 (internal quotation marks omitted). In such a case, the inference of liability is merely speculative. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Id.</u> at 679 (quoting FED. R. CIV. P. 8(a)(2)) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at

678.

The Ninth Circuit addressed post-Iqbal pleading standards in Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). The Starr court stated, "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id.

III. Analysis

A union breaches its duty of fair representation "only when [its] conduct toward a member . . . is arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (1967). "An employee has no absolute right to have a grievance taken to arbitration." Castelli v. Douglas Aircraft Co., 752 F.2d 1480, 1482-83 (9th Cir. 1985). "Unions need not arbitrate every case." Johnson v. U.S. Postal Serv., 756 F.2d 1461, 1465 (9th Cir. 1985). Indeed, they "may screen grievances and arbitrate only those they believe are meritorious." Id.

A union's conduct is discriminatory if there is "substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." Amalgamated Ass'n of St., Elec., Ry. & Motor Coach Emp. of Am. v. Lockridge, 403 U.S. 274, 301 (1971). Its conduct is in bad faith if there is "substantial evidence of fraud, deceitful action or dishonest conduct." Id. A union's conduct is arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational.'" Pegany v. C & H Sugar Co., Inc., 201 F.3d 444 (9th Cir.1999) (quoting Air Line Pilots Ass'n., Int'l v. O'Neill, 499 U.S. 65, 67 (1991)); see also Salinas v. Milne Truck Lines, Inc., 846 F.2d 568, 569 (9th Cir. 1988) ("A union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance.").

Here, even Plaintiff's amended claims do little more than add conclusory language to the complaint. His statement that the Union's refusal to arbitrate his termination without providing a reason was "arbitrary, discriminatory and in bad faith" is a legal conclusion. The Union

- 5 -

represented him at a mediation with Caesars regarding his termination. After Plaintiff requested that the Union pursue arbitration on his behalf, the Union, being familiar with both parties' claims at the mediation, decided that Plaintiff's claim was not substantive enough to pursue. When a union exercises its judgment, its action "can be classified as arbitrary 'only when it is irrational, when it is without a rational basis or explanation.' " Beck v. United Food, 506 F.3d 874, 879 (9th Cir. 2007) (quoting Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 46 (1998). Indeed, under this "highly deferential" standard, union conduct will only be deemed arbitrary if it is "so far outside [the] 'wide range of reasonableness,' Demetris v. Transport Workers Union of Am., AFL-CIO, 862 F.3d 799, 805 (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953), that it is wholly 'irrational.' " Air Line Pilots, 499 U.S. at 78 (1991) (partial citation omitted).

Here, the only facts that Plaintiff alleges that show the Union's conduct could be discriminatory or in bad faith are the refusal to arbitrate his termination grievance, that it refused to represent him because he had filed so many grievances, that the Union representative's "loyalties" were with Caesars and that the Union did not pursue grievances because Caesars did favors for the Union. However, most of these arguments are circular or conclusory. Plaintiff's allegation -- that the Union's decision to not pursue arbitration was arbitrary because it did not pursue his grievance to arbitration -- is circular. Plaintiff must allege an underlying action that is arbitrary, discriminatory or in bad faith. There must be more than a failure to pursue arbitration on a claim the Union was intimately familiar with.

Similarly, other than failing to pursue arbitration of his grievance, Plaintiff did not identify specific facts showing that "Mr. Contorelli's loyalties were with Defendant Caesars rather than to union members such as Plaintiff." Further the allegation that the Union failed to pursue arbitration on Plaintiff's behalf "due to Plaintiff's filing of numerous grievances" does not comport with the rest of the factual allegations. The sum of grievances that Plaintiff's complaint alleges that Plaintiff actually filed appears to be one (1). If the Court were to read the complaint liberally, which it is not required to do because Plaintiff is represented by counsel, Plaintiff may have filed up to three (3) grievances. However, this does not reflect Plaintiff's

allegation that the Union failed to seek arbitration "because Plaintiff had filed numerous grievances and Defendant Local 165 was begrudged and therefore did not care to fairly represent Plaintiff." Three, at most, is not numerous.[3]

To state a claim against the Union, Plaintiff has the burden to demonstrate the Union breached its duty of fair representation. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 570–71 (1976). Whether to pursue a grievance is typically a decision in which unions "retain wide discretion to act in what they perceive to be their members' best interests." Peterson v. Kennedy, 771 F.2d 1244, 1253 (9th Cir. 1985). Plaintiff's first amended complaint does not allege enough specific facts to support a reasonable inference that the Union breached its duty of fair representation in handling his grievance, and mostly includes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Therefore, having previously granted Plaintiff leave to amend, the Court grants Defendant Bartender's Union Local 165's motion to dismiss.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Bartenders' Union Local 165's Motion to Dismiss Amended Complaint (#44) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant Bartenders' Union Local 165 only and against Plaintiff.

Dated this 28th day of February, 2022.

Kent J. Dawson
United States District Judge

---

[3] *Numerous*, Webster's II New Riverside University Dictionary (1st Ed. 1988) ("Consisting of many persons or items"); *Many*, Id. ("a large indefinite number").