UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STANLEY E. STILWELL, JR., <br><br> Plaintiff, <br><br> v. <br><br> CAESARS ENTERTAINMENT CORPORATION, *et al.*, <br><br> Defendant. | Case No. 2:19-cv-01896-KJD-VCF <br><br> ORDER |

Presently before the Court is Defendant Caesar Entertainment Corporation's Motion for Summary Judgment (#70). Plaintiff filed a response in opposition (#75) to which Defendant replied (#78).

I. Facts

3535 LV Newco, LLC ("3535 LV") operates The LINQ Hotel & Casino. It is an affiliate within the "Caesars Entertainment" brand of casino hotels. Defendant Caesars Entertainment Corporation ("CEC") is a holding company that, while affiliated with 3535 LV, does not operate The LINQ or employ any individual who works at The LINQ. CEC has never employed Plaintiff. During his deposition, Plaintiff acknowledged that he has no evidence to refute these facts. See Doc. No. 70, Defendant's Motion for Summary Judgment ("MSJ") Exhibit B, at 43:1-18 ("Ex. B"). In the sworn statement that he submitted to the National Labor Relations Board about the same events at issue in this litigation, Plaintiff acknowledged that it was 3535 LV Newco, not CEC, who employed him. MSJ, Exhibit C ("I was employed by 3535 LV Newcom (sic), LLC d/b/a Linq Hotel-Casino"); Ex. B, at 193:12-14, 194:8-23, 195:8-17. 3535 LV Newco is not named as a defendant in this case, and the deadline to amend Plaintiff's complaint to add or remove parties expired on June 8, 2020.

In 2014, 3535 LV ("The LINQ") hired Plaintiff as a Bartender. The LINQ maintains

Equal Employment Opportunity ("EEO") policies which strictly prohibit discrimination and harassment based on all legally protected characteristics, including disability. These EEO policies are distributed to employees during new hire orientation. Employees are informed of multiple available methods of reporting potential violations of EEO policies, and retaliation for reporting an EEO policy violation is prohibited.

As a Bartender at The LINQ, Mr. Stilwell's employment was also governed by a Collective Bargaining Agreement ("CBA") that his union, Bartender and Beverage Dispensers Union Local 165, entered into with 3535 LV. See MSJ, Ex. E. In August 2018, after a "decker bump" caused Mr. Stilwell's transfer to a different department within The LINQ, Mr. Stilwell filed a grievance through his union.[1] In the grievance, Mr. Stilwell alleged that he should have received, but did not receive, a fifty cent raise upon his transfer. In this grievance, Mr. Stilwell did not assert any allegations of disability discrimination or failure to accommodate a disability.

Shortly after his transfer to a different position, Human Resources learned that Plaintiff was claiming to have missed work in connection with medical events. Human Resources encouraged Plaintiff to apply for intermittent FMLA leave so that he would have available to him a mechanism by which he could inform The LINQ any time an absence was related to a potential disability or other medical condition. MSJ, Ex. B, at 30:12-31:7 ("I told them it was medical related and that I needed to. They advised that there was an FMLA program. So sought FMLA, it was granted, it was approved.")

In September 2018, Mr. Stilwell submitted a medical certification which stated that he suffered from an unspecified anxiety disorder. According to Mr. Stilwell's medical provider, when flare-ups caused Mr. Stilwell to experience a loss of focus and concentration, he would need intermittent leave lasting up to 4 days per month (more specifically, 2 times per month, 1-2 days per episode). The LINQ granted Mr. Stilwell's request for this intermittent leave.

As an employee of The LINQ, Mr. Stilwell was expected to conduct himself appropriately while at The LINQ or any of the other properties within the Caesars Entertainment

---

[1] The decker bump process, established through The LINQ's collective bargaining agreement, allows employees to "bump" other employees out of positions, based on seniority, when reductions in force occur.

brand. This applied whether Mr. Stilwell was on duty or off duty. MSJ, Ex. I (Item No. 9: "Team Members will not violate the Company's policy regarding the use of premises while off duty"); see also id. ("Use of Facilities" policy, which states that "even though off duty, you are expected to conduct yourself in a manner consistent with the Conduct Standards").

On October 2, 2018, at approximately 3:30 a.m., Mr. Stilwell and another LINQ Bartender were present at The Flamingo Hotel & Casino, a property that is affiliated with the LINQ. When Security noticed that Mr. Stilwell's associate was stumbling and had nearly fallen over while attempting to sit down on a barstool, Security approached the individual to conduct a wellness check. Security approached Mr. Stilwell's associate while Mr. Stilwell was not present. When Mr. Stilwell noticed Security talking to his friend, Mr. Stilwell immediately began arguing with the Security officers. With Mr. Stilwell's conduct becoming increasingly hostile, Security requested, multiple times, that Mr. Stilwell and his associate depart from the premises for the evening. While Mr. Stilwell's associate was compliant and cooperative, Mr. Stilwell refused to obey Security's instructions. As a result, Security "86'd" Mr. Stilwell (meaning that Mr. Stilwell was informed that he was trespassing on property and was instructed to leave). Since it violated the conduct rules mentioned above, Mr. Stilwell's behavior also resulted in Mr. Stilwell's employment being suspended pending investigation ("SPI").

Pursuant to the CBA, where an employee is suspended pending investigation, The LINQ must endeavor to complete its investigation of the underlying events within two weeks (or else, the suspension converts to a disciplinary action that can be grieved). Upon learning of Mr. Stilwell's suspension, The LINQ's Human Resources department quickly began investigating. The LINQ first interviewed the Security officers who were involved in the incident. Through those interviews, multiple security officers confirmed that Mr. Stilwell had engaged in aggressive behavior and had refused to abide by Security's directives.

As is its normal practice, The LINQ also contacted Mr. Stilwell so that he, too, could be interviewed. When The LINQ called Mr. Stilwell on October 9, 2018 to schedule his Due Process interview, Mr. Stilwell's outgoing voicemail message stated that Mr. Stilwell could not review emails or texts since the screen on his mobile phone was cracked. The outgoing message

1  then instructed callers to either leave a message or contact Mr. Stilwell by regular mail. The
2  LINQ did both.
3      Upon receiving post office confirmation that Mr. Stilwell had received the October 10,
4  2018 letter, The LINQ called Mr. Stilwell for a second time (on October 12, 2018). This time,
5  The LINQ was unable to leave a message for Mr. Stilwell because, according to the outgoing
6  message on his mobile phone, his voicemail was full. The LINQ finally reached Mr. Stilwell on
7  October 15, 2018, during its third attempt to reach Mr. Stilwell by phone (and, notably, one day
8  after the expiration of the two-week window described above). During that call, Mr. Stilwell
9  confirmed his receipt of The LINQ's October 10, 2018 letter but stated that he was unable to
10 meet with Human Resources because he was out of town. Although The LINQ could have
11 elected (given the time that had passed) to make a final determination without Stilwell's input, its
12 Human Resources department accommodated Mr. Stilwell's schedule and arranged for Mr.
13 Stilwell to be interviewed on October 19, 2018.
14     On October 19, 2018, Mr. Stilwell claimed a need to reschedule the meeting that was set
15 to occur later that day. Mr. Stillwell's stated reason for needing to continue this meeting was that
16 he had (1) ongoing and active substance abuse issues and (2) either a cold or the flu. Ex. B, at
17 125:2-17 ("Q. So the 'serious underlying medical condition' that you are referring to there [when
18 asking to reschedule the October 19 meeting] is the substance abuse issue that we have
19 previously discussed? A. Correct. Q. And was that substance abuse issue ongoing at the time that
20 you sent this email to Angie? A. Correct.").
21     As a courtesy to Mr. Stilwell, The LINQ once again rescheduled the interview for
22 October 22, 2018. However, Mr. Stilwell canceled this meeting as well, leading The LINQ's
23 Human Resources department to reschedule it (again) for October 29, 2018. When October 29,
24 2018 arrived, Mr. Stilwell again canceled his interview, again due to the flu. The LINQ then
25 gave Mr. Stilwell one final opportunity to be interviewed, this time on November 1, 2018. As it
26 had done in each prior communication, The LINQ also warned Mr. Stilwell: "if you are unable to
27 make the meeting that we are scheduling…, we will make a final employment decision." When
28 Mr. Stilwell once again failed to appear for his interview, The LINQ was forced to make a

decision about his employment without having heard Mr. Stilwell's version of the events of October 2, 2018. The LINQ terminated Mr. Stilwell's employment effective November 2, 2018.

In April 2019, Mr. Stilwell filed a charge of discrimination with the EEOC ("Charge"). In his Charge, Mr. Stilwell asserted allegations that his termination constituted disability discrimination and retaliation. Mr. Stilwell's Charge did not contain any allegations of a failure to accommodate a disability and/or engage in the interactive process required by the ADA. Moreover, Mr. Stilwell filed his charge against the wrong entity. MSJ, Ex. Q (EEOC Charge filed against CEC, not his employer, 3535 LV Newco).

II. Summary Judgment Standard

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light most favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v.

1   Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving
2   testimony," without more, will not create a "genuine issue" of material fact precluding summary
3   judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).
4       Summary judgment shall be entered "against a party who fails to make a showing
5   sufficient to establish the existence of an element essential to that party's case, and on which that
6   party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall
7   not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson,
8   477 U.S. at 248.

### III. Analysis

Plaintiff brings claims for (1) breach of contract; (2) discrimination under the Americans with Disability Act ("ADA"), 42 U.S.C. § 12101; and (3) retaliation under the ADA. Plaintiff concedes to the dismissal of his claim for breach of contract. Defendant has now moved for summary judgment on the remaining claims.

### A. Defendant's Employer

On October 11, 2019, two weeks before Plaintiff filed the Complaint (#1) in this action, he signed a sworn affidavit in a National Labor Relations Board ("NLRB") proceeding in which he acknowledged that he was employed by 3535 LV Newco, LLC d/b/a Linq Hotel-Casino. See Defendant's Motion for Summary Judgment, Doc. No. 70, Ex. C. At his deposition, Plaintiff confirmed that he signed the statement, initialed every page, and that it was accurate. Id., Ex. B, p. 192-95. In response to Defendant's motion for summary judgment, based in part on the Defendant's assertion that Plaintiff has sued the wrong party, Defendant points out that: (1) his hire letter is on Caesars Entertainment letterhead[2]; (2) he submitted his application for the job at www.caesars.com/careers; (3) he clocked in-and-out of for his shifts at the Linq Hotel; (4) he received paystubs from LV Newco LLC DBA the QUAD, QUD and 3535 Newco LLC, DBA the LINQ; (5) the letterhead on the document granting his FMLA request also said "Caesars Entertainment"; and (6) Defendant avers that he "disputes that CEC was not his employer" and that these facts are "extremely confusing for a layman like me."

---

[2] The letter merely says "Caesars Entertainment." It does not say Caesars Entertainment Corporation.

1    Plaintiff does not aver that CEC was his employer. He merely avers on October 12, 2022
2 that he is confused. "The general rule in the Ninth Circuit is that a party cannot create an issue of
3 fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins.
4 Co., 952 F.2d 262, 266 (9th Cir. 1991). "[I]f a party who has been examined at length on
5 deposition could raise an issue of fact simply by submitting an affidavit contradicting his own
6 prior testimony, this would greatly diminish the utility of summary judgment as a procedure for
7 screening out sham issues of fact." Foster v. Arcata Assocs., 772 F.2d 1453, 1462 (9th Cir.
8 1985).
9    The Ninth Circuit counsels that the "Foster-Radobenko rule does not automatically
10 dispose of every case in which a contradictory affidavit is introduced to explain portions of
11 earlier deposition testimony." Kennedy, 952 F.2d at 267. Instead, the Court must make a factual
12 determination that the contradiction was actually a sham. Id. Here, the Court finds that the
13 affidavit, though it contains material attempting to explain how he was confused, is a sham
14 because it does not explain how he could be so certain on October 11, 2019, that his employer
15 was 3535 LV Newco, LLC d/b/a Linq Hotel-Casino and two weeks later name the wrong entity
16 in his legal action. Further, the material he cites undercuts his explanation. His new hire letter
17 clearly notifies him that the conditions of his employment were subject to a collective bargaining
18 agreement. The CBA clearly identifies 3535 LV as Plaintiff's employer, a fact that the record
19 clearly demonstrates Plaintiff was aware of. When Plaintiff had issues with his pay or
20 assignment, he had no problem filing grievances under the CBA clearly identifying his
21 employer. Therefore, the Court finds that Plaintiff has failed to raise a genuine issue of material
22 fact about who employed him, because when it benefitted him Plaintiff had no problem
23 identifying his correct employer.

### B. ADA Claims

#### 1. CEC not subject to ADA and is not Plaintiff's employer

The ADA prohibits employers of fifteen or more employees from engaging in discrimination on the basis of disability. 42 U.S.C. §12101. As a holding company, CEC did not have at least 15 employees at any pertinent point in time. More specifically, CEC did not employ

Plaintiff. As CEC is not an employer for purposes of the ADA, and as CEC and Plaintiff have never entered into an employment relationship, CEC cannot be liable for alleged disability discrimination. See Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996) (claim of disability discrimination requires proof that the plaintiff's employer took an adverse employment action against him). Since CEC did not employ at least 15 people during the time period of Plaintiff's employment and because CEC did not employ or terminate Plaintiff, the Court must dismiss Plaintiff's ADA claims.

### 2. EEOC Charge

The ADA has adopted the same exhaustion requirements as those for Title VII. 42 U.S.C. § 12117(a); see also Stiefel v. Bechtel Corp., 624 F.3d 1240, 1245 (9th Cir. 2010) (stating the procedural requirements of Title VII apply to the ADA). Since Plaintiff never filed an EEOC Charge against 3535 LV Newco and because CEC is not subject to the ADA, the Court must dismiss the ADA claims in this action. 42 U.S.C. § 2000e-5(e)(1) (EEOC charge must be filed against the discriminating party within 180 days of the alleged discriminatory act).

To the extent that Plaintiff brings claims based on a failure to accommodate and/or a failure to engage in the interactive process, his claims must be dismissed because his EEOC charged only alleged discrimination. Green v. Los Angeles Cty. Superintendent of Schools, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (allegations not included in an EEOC charge generally may not be considered); Matthys v. Barrick Gold of N. Am., Inc., Case No. 3:20-CV-00034- LRH-CLB, 2020 WL 7186745, at *3 (D. Nev. Dec. 4, 2020) (concluding that a failure to accommodate claim was not exhausted where plaintiff alleged that he "was discriminated against because of [his] disability" but did not specify a failure to provide a reasonable accommodation); see also Green v. Nat'l Steel Corp., Midwest Div., 197 F.3d 894, 898 (7th Cir. 1999) (concluding that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA" such that "one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability"); Jones v. Sumser Ret. Vill., 209 F.3d 851, 853 (6th Cir. 2000) (concluding that the court does not have jurisdiction over a failure to accommodate claim because it was not asserted

in the charge, only a termination claim was asserted and "a termination claim differs in kind and date from an accommodation claim"). Here, the specific allegations in the Charge of Discrimination would not lead a party to believe that a failure to accommodate or failure to engage in the interactive process claim would arise out of the investigation into his alleged termination based on his disability, disparate treatment or retaliation allegations.

### C. Summary

The Court grants summary judgment to Defendant and against Plaintiff, because Plaintiff sued the wrong party. The undisputed evidence is clear that 3535 LV Newco, LLC was Plaintiff's employer not Caesar's Entertainment Corporation. Further, Plaintiff failed to file a Charge of Discrimination against 3535 LV Newco, LLC. Plaintiff is required to exhaust his administrative remedies against a party before filing suit. Thus, the Court need not consider the claims on the merits against Defendant, because CEC did not employ Defendant and even if it had, it did not have more than the statutorily required fifteen (15) employees. The Court need not consider claims against 3535 LV Newco, LLC, who was not named as a defendant or served process in this matter. Further, Plaintiff has not moved to amend the pleadings to add 3535 LV as a defendant. Finally, Plaintiff failed to include allegations of failure to accommodate or failure to engage in the interactive process in his Charge of Discrimination. Therefore, the Court grants summary judgment on all claims.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant Caesar Entertainment Corporation's Motion for Summary Judgment (#70) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

DATED this 24th day of March 2023.

_____
The Honorable Kent J. Dawson
United States District Judge